UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

HORTENCIA ESQUIVEL,
o/b/o J.M.,

    Plaintiff,

v.                                                                                                  Case No.: 8:24-cv-1928-LSG

COMMISSIONER OF SOCIAL
SECURITY,

    Defendant.
_____/

**ORDER**

The plaintiff Hortencia Esquivel, on behalf of her minor child J.M., appeals the termination of her son's Supplemental Social Security Income (SSI) benefits. Docs. 1, 17. As explained in this order, I affirm the Commissioner's decision because substantial evidence supports the Administrative Law Judge's decision.

### I.  Procedural Background

In 2017, Esquivel applied for SSI benefits on behalf of her son, J.M. Doc. 17 at 1; Tr. 93. The Commissioner determined that J.M. was disabled based on the medically determinable impairments of autism spectrum disorder and speech and language impairment. Tr. 104. J.M.'s disability had an onset date of July 14, 2017. Tr. 98, 104. During a July 25, 2022, continuing disability review, the Commissioner determined that J.M.'s impairments had medically improved and that he was no longer disabled. Doc. 21 at 1; Tr. 109–14. Thus, the Commissioner terminated J.M.'s

SSI benefits. Doc. 17 at 1; Tr. 109. Esquivel requested reconsideration on J.M.'s behalf. Doc. 17 at 2; Tr. 129. However, the Commissioner affirmed the termination. Doc. 17 at 2; Tr. 145–51, 153. Esquivel requested a hearing before an ALJ, which occurred on October 27, 2023. Tr. 78, 162, 187. Esquivel appeared and testified. Tr. 82–92. The ALJ's decision after the hearing was unfavorable. Tr. 53–72. Esquivel appealed the ALJ's decision to the Appeals Council. Tr. 207–09. The Appeals Council found no error in the ALJ's decision and informed Esquivel that the decision would be final pending appellate review. Tr. 1–7. Esquivel timely filed a complaint in this Court, Doc. 1, and the case is ripe for review. 42 U.S.C. §§ 405(g), 1383(c)(3).

## II.     Factual Background and the ALJ's Decision

Esquivel's minor son J.M. was born on February 18, 2015. Tr. 101. J.M. was two years old when his period of disability began on August 2, 2017. Tr. 93, 101. When first evaluated, J.M. was too young for school. Tr. 232. However, the Commissioner determined J.M. had marked limitations in the functional domains of acquiring and using information and interacting and relating to others, which resulted in the functional equivalent of a disability listing. Tr. 96–97. His medically determinable impairments included autism spectrum disorder and a speech and language impairment. Tr. 95–96. J.M. was seven years old when a continuing disability review determined that he was no longer disabled. Tr. 125. An agency disability hearing officer determined that J.M.'s disability ceased on July 25, 2022, based on an improvement in his condition. Tr. 145, 147.

After a hearing and reviewing the evidence, the ALJ determined that J.M. had severe impairments, including "Autism/Pervasive Development Disorder," ADHD, and a "speech/language impairment." Tr. 62. However, the ALJ determined that J.M.'s condition had medically improved since his initial disability determination on August 2, 2017. Tr. 63. In reaching that conclusion, the ALJ considered "the evidence of record." Tr. 64. The ALJ found that J.M.'s medically determinable impairments "could reasonably be expected to produce the alleged symptoms." Tr. 64. However, the ALJ concluded that Esquivel's "statements concerning the intensity, persistence and limiting effects of [J.M.'s] symptoms are not entirely consistent with the objective medical and other evidence." Tr. 64. The ALJ determined that J.M.'s symptoms had improved based on the medical evidence and found that the medical evidence did not support significant limits in J.M.'s functional domains. Specifically, the ALJ concluded that J.M. had no limit in the domains of acquiring and using information, moving about and manipulating objects, and caring for himself, Tr. 65, 69, 70, and a "less than marked" limit in the domains attending and completing tasks, interacting and relating with others, and health and physical well-being, Tr. 67, 68, 71.

As a result, the ALJ concluded that J.M. had no impairment or combination of impairments that functionally equaled the severity of a listed impairment in 20 C.F.R. Part 104, Subpart P, Appendix 1. Tr. 72. Thus, the ALJ determined that J.M.'s disability ended on July 25, 2022. Tr. 72.

3

### III. Standard of Review

An individual under the age of eighteen may qualify for SSI if the individual has a medically determinable physical or mental impairment that "results in marked and severe functional limitations, and which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 1382c(a)(3)(C)(i); *Gierbolini o/b/o A.M.G. v. Kijakazi*, No. 8:20-cv-1797-AEP, 2023 WL 2583298, at *2 (M.D. Fla. Mar. 21, 2023). A minor is disabled (1) if the minor is not engaged in substantial gainful activity; (2) if the minor has a medically determinable impairment that is severe; and (3) if the impairment meets, medically equals, or functionally equals a listing in 20 C.F.R. Part 104, Subpart P, Appendix 1. 20 C.F.R. § 416.924; *Balatbat-Light v. Comm'r of Soc. Sec.*, No: 6:16–cv–549–Orl–GJK, 2017 WL 1409739, at *2 (M.D. Fla. Apr. 20, 2017).

Once a minor is eligible for SSI, the Commissioner must conduct a review at least once every three years to determine the minor's continued eligibility based on medical improvement. 42 U.S.C. § 1382c(a)(3)(H)(ii)(I); *Balatbat-Light*, 2017 WL 1409739, at *2. To determine whether a minor's disability has ended, the ALJ must conduct a specific, three-step sequential evaluation to determine whether the minor's impairment qualifies as a disability under Section 1382c(a)(3)(C)(i). 20 C.F.R. § 416.994a(b). Based on the most recent favorable determination, known as the "comparison point decision," the ALJ must evaluate

> (1) whether the claimant has experienced medical improvement; (2) if the previous disability determination was based on the claimant meeting or medically equaling a listing, whether the current

4

> impairments meet or medically equal the same listing as it was written at the time of the previous disability finding; or, if previously found to be functionally equivalent to a listing, whether the current impairments functionally equal the listings; and (3) whether the claimant is currently disabled under the rules outlined in 20 C.F.R. § 416.924(c) and (d).

*Roberts o/b/o J.P. v. Bisignano*, No. 8:24-cv-1869-AAS, 2025 WL 2202457, at *1 (M.D. Fla. Aug. 4, 2025)(citing 20 C.F.R. §§ 404.1594a(f), 416.994a(b)).

An order affirming the Commissioner's decision is warranted if substantial evidence and applicable law support the decision. 42 U.S.C. §§ 405(g), 1383(c)(3); *Winschel v. Comm'r of Soc. Sec.*, 631 F.3d 1176, 1178 (11th Cir. 2011) (citations omitted). "Substantial evidence" means that which "a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Miles v. Chater*, 84 F.3d 1397, 1400 (11th Cir. 1996). The Commissioner's factual findings receive deference, but the legal conclusions receive "close scrutiny." *Keeton v. Dep't of Health & Human Servs.*, 21 F.3d 1064, 1066 (11th Cir. 1994).

"When deciding whether the ALJ's decision is supported by substantial evidence, the court must view the record as a whole, considering evidence favorable and unfavorable to the Commissioner." *Hill v. Comm'r of Soc. Sec.*, No. 2:24-CV-64-KCD, 2024 WL 4719493, at *1 (M.D. Fla. Nov. 8, 2024) (citing *Foote v. Chater*, 67 F.3d 1553, 1560 (11th Cir. 1995)). A reviewing court may not find facts, weigh evidence, or substitute its judgment for the ALJ's, even if the evidence preponderates against the ALJ's decision. *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983). However, the Commissioner's failing either to apply the law correctly or to provide sufficient legal analysis mandates reversal. *Keeton*, 21 F.3d at 1066. Thus, the

5

scope of review is limited to determining whether substantial evidence supports the Commissioner's findings and whether the Commissioner applied the correct legal standard. 42 U.S.C. § 405(g); *Wilson v. Barnhart*, 284 F.3d 1219, 1221 (11th Cir. 2002).

## IV. Analysis

Esquivel argues on appeal that substantial evidence does not support the ALJ's finding of medical improvement in J.M.'s impairments or the termination of J.M.'s SSI benefits. Doc. 17 at 2. Esquivel contends that the ALJ improperly found medical improvement based on evidence unrelated to his functioning domains. Doc. 17 at 6. Esquivel argues that J.M. remains impaired with marked limits in the domains of acquiring and using information and interacting with others. Doc. 17 at 12, 14. The Commissioner argues the opposite, explaining that substantial, record evidence supports the ALJ's finding that J.M. was no longer disabled as of July 25, 2022. Doc. 21 at 5.

### A. Substantial evidence supports the ALJ's finding that J.M.'s impairments medically improved.

At step one of the sequential evaluation process, the ALJ considers whether the minor's impairments have medically improved since the last comparison point decision. 20 C.F.R. § 416.994a(a)(1). "Medical improvement" in the minor's impairment means a decrease in the medical severity of the minor's impairment—as that impairment existed at the comparison point decision—based on changes in symptoms or laboratory findings. 20 C.F.R. § 416.994a(c). To identify medical

improvement in the minor's impairment, the ALJ must compare the available medical evidence from the minor's most recent comparison point decision with any new medical evidence. *Vaughn v. Heckler*, 727 F.2d 1040, 1043 (11th Cir. 1984) (holding that an ALJ cannot make an adequate finding of medical improvement absent a comparison between new medical evidence and the evidence upon which a claimant "was originally found to be disabled"). The Eleventh Circuit has emphasized that the comparison must be an "actual comparison" between the minor's recent medical evidence and the medical evidence used at the comparison point decision. *Freeman v. Heckler*, 739 F.2d 565, 566 (11th Cir. 1984) (holding that the determination of medical improvement requires an actual comparison of previous and current medical evidence); *Gierbolini o/b/o A.M.G.*, 2023 WL 2583298, at *4; *see also Klaes v. Comm'r of Soc. Sec. Admin.*, 499 F. App'x 895, 896 (11th Cir. 2012); *Lane o/b/o R.W. v. Comm'r of Soc. Sec.*, No. 8:20-cv-647-SPF, 2021 WL 3701559, at *3 (M.D. Fla. Aug. 20, 2021).

  Here, the ALJ explains that J.M. experienced medical improvement resulting in a decrease in the severity of his impairments as of July 25, 2022. Tr. 62. Specifically, the ALJ explains that, at the comparison point decision, J.M. was diagnosed with a speech and language impairment and autism. Tr. 63. The ALJ notes that speech and language testing showed that J.M.'s primary communication occurred through single words and gestures and that he had reduced social interactions. Tr. 63. In support of those assertions, the ALJ referenced J.M.'s records from June 27, 2017, to July 27, 2017. Tr. 63, 440–50. The ALJ goes on to explain

7

that the new medical evidence presented in a July 8, 2022, establishes that J.M. now has the diagnoses of

> mild receptive and moderate expressive language disorder, autism spectrum disorder without accompanying language disorder with childhood onset-fluency disorder (stuttering) severe, without accompanying intellectual impairment, ADHD, combined presentation, mild to moderate social pragmatic communication disorder and unspecified neurodevelopmental disorder.

Tr. 63. A recent speech and language evaluation revealed that, although J.M. still suffers a "mild receptive and moderate expressive language disorder," his speech was ninety-percent intelligible. Tr. 63, 512–13. J.M.'s mental status evaluation from July 18, 2022, indicated that J.M. could express himself verbally in mostly "yes/no" questions, could understand normal conversation speech, and follow simple and multi-level sets of instructions. Tr. 63, 517. J.M.'s July 18, 2022, mental status evaluation showed that J.M. had a low average to average intelligence and had no physical abnormalities. Tr. 63, 518. Based on this medical evidence, the ALJ concluded that the record did not support any marked limitation in J.M.'s functional domains and, therefore, J.M. experienced medical improvement. Tr. 63.

Based on my review of the decision, I find that the ALJ properly considered the prior[1] and current medical evidence and supported the finding of medical

---

[1] It is worth mentioning that the records from J.M.'s comparison point decision consist of only fifty-four pages. Tr. 221–41, 418–50. A child's functional ability typically improves with age, particularly from age two to age seven. J.M. was two years old at the comparison point decision. Tr. 93. He was seven at the continuing disability review. Tr. 125. The hope, and indeed the likely purpose of a continuing disability review, is to see whether time and growth lead to improvement in cognitive, emotional, and language abilities. Thus, an examination of the available medical records ensures a child's specific, medical improvement that results from a decrease in the impairment's severity, not merely as a byproduct of the child's growth. Although the medical records from the comparison

improvement with substantial evidence. The ALJ reviews J.M.'s medical records from his comparison point decision and clearly identifies the medically determinable impairments assessed at that time. Tr. 63, 440–50. The ALJ highlights the specific improvements in J.M.'s speech and language impairment through an examination of his prior and current speech and language evaluations. Tr. 63. Accordingly, I find that the ALJ applied the correct legal standard and engaged in an actual comparison of the prior and current medical evidence to conclude that J.M. experienced medical improvement in the severity of his impairments. *See* 20 C.F.R. § 416.994a(a)(1); *Freeman*, 739 F.2d at 566; *Gierbolini o/b/o A.M.G.*, 2023 WL 2583298, at *4.

### B. Substantial evidence supports the ALJ's finding that J.M. was no longer disabled.

If the evidence demonstrates that the minor has medically improved, at step two of the sequential evaluation process, the ALJ must determine whether the minor's impairment still meets, medically equals, or functionally equals the same level of severity assessed at the comparison point decision. *Gierbolini*, 2023 WL 2583298, at *2 (citing 20 C.F.R. § 416.994a(b)(2); SSR 05-03p). A minor "meets" a listing by suffering the functional limits specified in a listing. *Roberts o/b/o J.P.*, 2025 WL 2202457 at *2 (citing *Shinn ex rel. Shinn v. Comm'r of Soc. Sec.* 391 F.3d 1276,

---

point decision are few, the records provide sufficient information supporting the medically determinable impairments. Tr. 440–50. Because the ALJ described and referenced these specific records in his evaluation, I find that the ALJ's comparison of the medical records was not a cursory reference and constituted an "actual comparison" of J.M.'s recent medical evidence and the medical evidence used at the comparison point decision. *See Freeman*, 739 F.2d at 566; *Klaes*, 499 F. App'x at 896.

1279 (11th Cir. 2004). A minor's impairment "medically equals" a listing if his limits are "at least of equal medical significance to those of a listed impairment." *Id*. If the minor's impairments do not meet or medically equal a listing, the ALJ may determine that the minor is disabled if the impairments "functionally equal" a listing. The ALJ determines whether the minor's impairments functionally equal a listing based on the extent of the impairments' impact on the minor's ability to (1) acquire and use information; (2) attend and complete tasks; (3) interact and relate with others; (4) move about and manipulate objects; and (5) care for oneself, as well as (6) the minor's health and physical well-being. *Id*.; 20 C.F.R. § 416.926a(b)(1)(i)–(vi). The ALJ may find that the minor's impairment functionally equals a listing if the functional limits cause by that impairment are "marked" in at least two domains or are "extreme" in at least one domain. 20 C.F.R. § 416.926a(a), (d). A functional limit is "marked" if the impairment interferes seriously with the minor's ability to independently initiate, sustain, or complete activities to the extent day-to-day functioning may be seriously limited in one activity or the interactive and cumulative effects of the impairment limit several activities. 20 C.F.R. § 416.926a(e)(2)(i). An "extreme" limit interferes "very seriously" with the minor's ability to independently function and is reserved as a rating for the "worst limitations" caused by a minor's impairments. 20 C.F.R. § 416.926a(e)(3)(i).

If the minor's impairment does not meet or equal the same listing, the ALJ considers whether the minor's existing and any new impairments render him disabled based on their severity. *See* 20 C.F.R. § 416.994a(b)(3). Thus, at step three,

the ALJ must determine whether the minor's new or previously unconsidered impairment is "severe" and whether the impairment meets or medically equals a listing in 20 C.F.R. Part 404, Subpart P, App'x 1. *See* 20 C.F.R. § 416.994a(b)(3)(ii). If not, the ALJ must assess whether the impairment functionally equals a listing. 20 C.F.R. § 416.994a(b)(3)(iii). Absent a medical or functional equivalency to a listing, the ALJ must deem the minor not disabled. *See id*.

After finding that J.M. experienced medical improvement since August 2, 2017, the ALJ determined that J.M.'s medically determinable impairments have not functionally equaled a listing as written at the time of the comparison point decision. Tr. 63. Citing to the medical records, the ALJ explains that J.M.'s impairment did not functionally equal the listing 112.02 because the medical evidence did "not support any marked limitations in any of the functional domains." Tr. 63.[2]

At step three, the ALJ found that as of July 25, 2022, J.M. had been diagnosed with a "Speech/Language Impairment and Autism/Pervasive Development Disorder and ADHD," but his impairments did not meet the disability requirements. Tr. 64. Specifically, the ALJ found that J.M. had "less than marked limitations in attending/completing tasks, interacting and relating with others and health/physical wellbeing with no limitations in the remainder functional domains." Tr. 64.

---

[2] The ALJ did not provide a thorough analysis at step two. Indeed, the ALJ's discussion of J.M.'s impairments and their equivalency to the listings as written at the time of the comparison point decision is limited to one sentence paired with three citations to the medical record. Tr. 63. Despite the brevity of the ALJ's findings, neither party raised the sufficiency of the step two analysis or findings. Therefore, any issue on the matter is waived. *See Jones v. Apfel*, 190 F.3d 1224, 1228 (11th Cir. 1999) *(superseded on other grounds by statute, as recognized in Washington v. Comm'r of Soc. Sec.*, 906 F.3d 1353 (11th Cir. 2018)).

The functional domain of attending and completing tasks assesses how well a minor can focus, maintain attention, and conducts activity. 20 C.F.R. § 416.926a(h). The ALJ explains that J.M.'s medical and educational records show that although J.M. reportedly has had problems paying attention, following instructions, and working at a reasonable pace, Tr. 476–505, he is responsive to prompts from his teacher, follows directions, participates in class activities, and even asks to stay behind in special classes if he believes he can complete assignments. Tr. 67, 451–75. The ALJ notes that J.M.'s IEP includes explicit cues, practices, and procedures to accommodate his symptoms, and that those accommodations are effective based on J.M.'s reported classroom performance and "satisfactory" grades. Tr. 67, 566. Thus, the ALJ found that J.M. had a less than marked limitation in this domain based on the record. Tr. 67.

The domain of interacting and relating with others assesses a minor's ability to initiate and sustain emotional connection with others, develop and use language, cooperate and comply with rules, respond to criticism, and care for the possessions of others. 20 C.F.R. § 419.924a(i). The ALJ determined that J.M. had a less than marked limitation in this domain based on the record. Tr. 68. The ALJ explains that treatment notes from J.M.'s therapy sessions in July 2023 show improvement in his aggressive behavior toward his brother in July 2023. Tr. 68, 672, 675, 678. The ALJ cites J.M.'s individualized education plan from January 24, 2022, to explain that J.M.'s behavior does not reportedly impede his learning or the learning of others, and that J.M. "is able to clearly express his wants, needs and desires, as well as

participate in conversations with adults and peers." Tr. 68, 452. The ALJ notes that the individualized education plan records are consistent with the July 2022 speech and language evaluation, which reported J.M. had a "mild receptive language and moderate expressive language disorder" with average vocabulary skills and developmentally appropriate dialectical errors. Tr. 68, 513. Further, the ALJ cites medical records from October 2022, which demonstrate improvement in J.M.'s symptoms and progress in his sensory, speech, and mannerisms. Tr. 68–69, 585–86.

      The domain of health and physical well-being assesses a minor's ability to meet his physical and emotional needs in appropriate ways, to cope with stress and changes in his environment, and whether the minor cares for his own health, possessions, and living area. 20 C.F.R. § 416.926(k). For this domain, the ALJ referenced medical records that J.M. received medical diagnoses of autism, ADHD, primary insomnia, and macrocephaly. Tr. 71, 456. The record contains evidence of instructions provided to J.M.'s school about the interaction of his medication, including "difficulty completing work, inattention, sensory overload, hyperactivity, and difficulty with social interactions." Tr. 71, 456. The ALJ acknowledged J.M.'s diagnoses but ultimately concluded they resulted in a less than marked limit in the domain of health and physical well-being. Tr. 71. Based on the record, the ALJ concluded that J.M. did not have or develop any additional medically determinable impairment or combination of impairments that met, medically equaled, or functionally equaled a listing after the comparison point decision. Tr. 71–72.

After a careful review of the ALJ's decision, I find that the ALJ properly considered the medical and factual record to determine whether J.M. remained eligible for disability benefits under Section 1382c(a)(3)(C)(i). *See* 20 C.F.R. § 416.994a(b); *Roberts o/b/o J.P*, 2025 WL 2202457, at *1. Accordingly, I find that substantial evidence supports the ALJ's decision. *See Hill*, 2024 WL 4719493, at *1. The ALJ properly compared the previous and new medical evidence to determine whether J.M. experienced medical improvement and supported his findings at step three with substantial evidence from the record. *See* 42 U.S.C. §§ 405(g), 1383(c)(3); *Winschel*, 631 F.3d at 1178. Esquivel contends that the ALJ did not support his opinion with substantial evidence, going so far as to argue that the ALJ omitted certain record evidence from his decision. Doc. 17 at 15. However, her argument, in essence, asks the court to reweigh the evidence. Because substantial evidence supports the ALJ's decision, and the ALJ applied the proper legal standard, I cannot reweigh the evidence or substitute my own judgment here. *Keeton*, 21 F.3d at 1066; *Bloodsworth*, 703 F.2d at 1239. Therefore, the ALJ's decision that J.M.'s disability ended on July 25, 2022, and that he has not become disabled since should be affirmed. *See* 42 U.S.C. § 405(g); *Wilson v. Barnhart*, 284 F.3d at 1221.

## V.     Conclusion

For the reasons explained above, the decision of the Commissioner is **AFFIRMED**. The Clerk is directed to enter final judgment in favor of the Commissioner, terminate any pending motion, and close the case.

**ORDERED** in Tampa, Florida on the 25th day of September, 2025.

LINDSAY S. GRIFFIN
United States Magistrate Judge